UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | 20-CR-65 |
| | * | |
| versus | * | Section L |
| | * | |
| ROBERT B. CALLOWAY | * | September 28, 2023 |
| | * | |

* * * * * * * * * * * * * * * *

TRANSCRIPT OF SENTENCING BEFORE
THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

Appearances:

| | |
|---|---|
| For the United States: of America: | U.S. Attorney's Office<br>BY:  MATTHEW RICHARD PAYNE, ESQ.<br>       JEFFREY RYAN MCLAREN, ESQ.<br>       NICHOLAS DUPUY MOSES, ESQ.<br>650 Poydras Street, Suite 1600<br>New Orleans, Louisiana 70130 |
| For Robert B. Calloway: | Smyser Kaplan & Veselka, LLP<br>BY:  RICHARD HOUGHTON, ESQ.<br>       DANE C. BALL, ESQ.<br>717 Texas Avenue, Suite 2800<br>Houston, Texas 77002 |
| Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Room B-275<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |

Proceedings recorded by mechanical stenography using computer-aided transcription software.

## PROCEEDINGS

### (September 28, 2023)

THE COURT:  Call the case.

THE DEPUTY CLERK:  Criminal Action 20-65, *United States of America v. Robert Calloway*.

THE COURT:  Counsel make their appearance for the record, please.

MR. PAYNE:  Your Honor, good afternoon.  Matthew Payne, Nicholas Moses, and Ryan McLaren for the United States.

MR. HOUGHTON:  Good afternoon, Your Honor. Rick Houghton and Dane Ball on behalf of Robert Brad Calloway.

THE COURT:  Mr. Robert Calloway, I appreciate you being here, sir.

THE DEFENDANT:  Good afternoon.

THE COURT:  Good afternoon.

On August 5, defendant Robert Calloway and his co-defendants were charged in a 49-count second superseding indictment.  The matter is before the Court for sentencing. The defendant pled guilty to Count 1 of the second superseding indictment.  Count 1 charged the defendant with conspiracy to commit bank fraud, all in violation of 18 U.S.C. §§ 1344 and 1349.

I've reviewed the presentence investigation report.  I'm ready to impose sentence.  Any objection to sentencing at this time?

**MR. HOUGHTON:**  No, Your Honor.

**MR. PAYNE:**  No, Your Honor.

**THE COURT:**  Mr. Calloway, have you received a copy of the presentence investigation report, have you read it, sir, and do you understand it?

**THE DEFENDANT:**  Yes, sir, I have.

**THE COURT:**  I understand the defendant has filed 14 objections to the report.  However, the defendant has withdrawn some of the objections.  Regarding objections 2, 3, 7, 10, and 11, the defendant has withdrawn those objections on September 18, 2023, and therefore they are moot.

**MR. HOUGHTON:**  Your Honor, if I may, we understand that due to the five-year cap, nothing is going to change the guideline sentence, and we will stand on our written objections.

**THE COURT:**  Okay.  On objection 1, the defendant objects to paragraph 149 and claims that the record does not show he unjustly enriched himself by engaging in the offensive conduct.  This paragraph was derived directly from the superseding bill of information to which the defendant pled guilty.  Accordingly, that objection is overruled.

Regarding objections 4 and 8, the defendant objects to the recommended two-level aggravated role enhancement pursuant to United States Sentencing Guideline § 3B1.1(c).  He first argues that his involvement was limited

to Gibbs' relationship, which indeed it was.  Second, he argues that he did not control funds and assets with respect to that relationship.  He argues that he lacked the authority to approve Gibbs' overdrafts for the incremental loans that First NBC issued to Mr. Gibbs.  Lastly, the defendant argues that he's not a manager of criminal activity.

Pursuant to United States Sentencing Guideline § 3B1.1(c), the guideline provides that if a defendant was an organizer, leader, manager, or supervisor of any activity, the offense level is increased by two levels.  According to United States Sentencing Guideline § 3B1.1, Comment 2, to qualify for an adjustment under the section, the defendant must have been an organizer, a leader, a manager, or supervisor of one or more participants; an upward departure may be warranted.  However, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of the criminal organization, according to the guidelines they may qualify for a two-level enhancement.

Factors that the Court should consider in making a determination are outlined in United States Sentencing Guideline § 3B1.1 in Comment 4 specifically, which includes the exercise of decision-making authority, the nature and participation of the commission of the offense, the degree of participation in planning of the organization, the offense, the

nature and scope of the illegal activity, and the degree of control and authority exercised over others.  In United States Sentencing Guideline § 3B1.1, the background comment, this adjustment is included primarily because of a concern for relative responsibility.

Now, in this instant situation, the defendant was employed by First NBC as executive vice president.  He served as a commercial relationship manager with a tax credit specialization.  He continued to approve and facilitate Mr. Gibbs' loans, then concealed the truth concerning Gibbs' ability to repay the loans from the board of directors, from the auditors, and from the examiners.

Further, the fraud committed by the defendant and his co-conspirators was pervasive and extensive.  It spanned a period of over a decade.  Thus the Court finds that the two-level increase pursuant to United States Sentencing Guideline § 3B1.1(c) is appropriate and the defendant's objections are overruled.

Regarding objections 5 and 12, the defendant objects to the noted restitution amount.  He argues that he is not responsible for the restitution amount as the loss sustained by the offense is less than the amount listed in paragraphs 247 and 324.

On September 18, 2023, the defendant indicated that he maintains his objection to the recommended restitution

amount.  However, he does not object to these paragraphs to the extent that they rely on the estimate of the actual loss arising from the offense of conduct.  In this instance the amount listed in paragraphs 247 and 324 were derived directly from the FDIC after all offsets and all mitigating factors were considered.  Accordingly, this objection is overruled.

Regarding objections 6 and 9, the defendant objects to the proposed two-level increase for obstructing justice in this case.  According to United States Sentencing Guideline § 3C1.1, if a defendant willfully obstructs or impedes or attempts to obstruct or impede the administration of justice with respect to the investigation as well as the prosecution or sentencing of the instant offense of conviction, and if the obstructive conduct is related if any way to the defendant's offense of conviction or any relevant conduct or a closely related offense, the offense level may be increased by two levels.

In the instant offense, the evidence supports the conclusion that the defendant obstructed justice in the investigation of this incident based on his lies, his failure to disclose the truth to the FDIC examiners who performed bank examinations every year while the bank was open.  The defendant also misled the nongovernmental auditors who similarly investigated loans of the bank while it was open.  This obstructive conduct spanned about nine years.  Accordingly,

that objection is overruled.

Regarding objections 13 and 14, the defendant objects to paragraph 326, which states that the probation office has not identified any factors that would warrant a departure from the applicable sentencing guideline range and points to paragraph 30, which addresses factors that may warrant a variance.

Defendant argues that he rendered substantial assistance to the government and anticipates that the government will move for a departure under §~5K1.1.  He has also filed his own sentencing memorandum analyzing 18 U.S.C. § 3553(a), which is very helpful to me.  A § 5K1.1 motion is filed by the government and not under the purview of the probation office.  Similarly, the probation office, they really don't file a sentencing memorandum pursuant to 18 U.S.C. § 3553(a).  I will address these motions separately. Accordingly, the defendant's objection is noted but is mooted in this matter.

There being no further objections to statements contained in the presentence investigation report, the Court adopts those statements, in addition to the changes already mentioned, as its findings of fact.

Having reviewed the objections and applied the appropriate modifications, the Court finds that the applicable guidelines, first without any departures, would be a total

offense level of 37, Criminal History Category I, indicating: imprisonment for 60 months; probation is not applicable; supervised release, one to three years; fine, $40,000 to $246 million; a special assessment fee of $100; restitution, $123 million.

Mr. Calloway, you have a right to make a statement and present any information you have in mitigation. Whatever you have to say, sir, I certainly will listen to you.

**THE DEFENDANT:** Your Honor, I apologize for the circumstances and the reasons that I'm appearing before your Court today. I'm the one responsible for my actions. I did not respond in the way that I should have. I should have refused to do the loan extensions for a presentation that had false information and had omissions of information. I should have refused and I should have reported Mr. Ryan's actions to the board members, to the internal auditors, the external auditors, and the FDIC examiners.

My failure to act resulted in significant damage to the City of New Orleans, to the employees of the bank, to the customers of the bank, and created losses that caused the FDIC and the DOJ to have to open investigations and cost the government substantial amounts of money. For that I truly am sorry. I wish I could change history, but I cannot. All I can truly tell you, Your Honor, is that I am taking what I have learned from these things and applying it to make sure that I

have the utmost integrity and truthfulness in everything that I try to do on a daily basis today.  Thank you, Your Honor.

**THE COURT:**  Thank you very much.

Anything, Counsel?

**MR. HOUGHTON:**  Yes, Your Honor.  Thank you.  May it please the Court.  It is my privilege to represent a remarkable person at this proceeding today, Mr. Brad Calloway.  With us are Mr. Calloway's wife of 39 years, Laura, his two daughters who live in the area, as well as their spouses.

Your Honor, we respectfully ask for a within recommended range sentence of probation.  This is a sentence that the government has agreed is reasonable by including it in the range.  Probation is a sufficient but not greater than necessary punishment for Mr. Calloway based on:

First, his cooperation;

Second, the assistance that he gave to the FDIC;

Third, the life that he has led outside the offense;

Fourth, his acceptance of responsibility; and

Fifth, because probation will avoid sentencing disparities in this case.

Your Honor, I'm just going to spend a quick minute or so on each of these points, starting first with Mr. Calloway's cooperation.  It was extraordinary.  As the government noted in its § 5K1.1 motion, Mr. Calloway's plea and

cooperation directly led to the conviction of Mr. William Burnell, the second highest ranking FNBC officer who was charged. As a result of Mr. Burnell's plea, the government shed a high-profile defendant and was able to reallocate resources to focus trial on the case's most culpable offender, Mr. Ryan. Moreover, Mr. Burnell not only pleaded guilty, he also cooperated and testified on the government's behalf.

Mr. Calloway's cooperation was also, as the government put it, extremely helpful and useful in securing Mr. Ryan's conviction. At trial, Your Honor, Mr. Calloway's credible testimony on direct considerably helped the government in proving Ashton Ryan's guilt. Mr. Calloway then withstood and materially advanced the government's case during cross-examination. As the government explained in its papers, the jury convicted Mr. Ryan on all 43 counts due in substantial part to Mr. Calloway.

I want to touch briefly on the timing of Mr. Calloway's cooperation and plea. Mr. Calloway pleaded guilty in August of last year, about five months before trial, and he immediately began to cooperate. He would have pleaded guilty and cooperated much earlier but for his four-year experience with conflicted counsel. Mr. Calloway always knew what he had done was wrong, but to our surprise he did not, even after that four-year representation, understand that his wrongdoing constituted a federal crime.

After the Court disqualified his prior firm, Mr. Calloway promptly hired unconflicted counsel.  Despite his former representation, Mr. Calloway reapproached the case with an open mind.  Within only weeks of working with us, Mr. Calloway understood that his conduct was not only wrong, but illegal.  He then pleaded guilty as soon as possible, delayed only by our need to completely review the file.

I think the government would agree that Mr. Calloway pleaded guilty and cooperated at the absolute earliest opportunity in light of the circumstances.  To avoid any issue about Mr. Calloway's constitutional rights to unconflicted counsel, we respectfully ask that the Court view Mr. Calloway as the or among the earliest cooperators in this case, which is fully supported by his pre- and post-conflict actions.

In short, Your Honor, Mr. Calloway's cooperation was of critical importance in securing the convictions of the two highest ranking FNBC officers who were charged.  It was timely.  Based on his experience with conflicted counsel, we ask that the Court treat Mr. Calloway as one of the earliest cooperators and request that the Court allow him the maximum allowable departure due to his cooperation.

I would like to turn to the second reason a probation sentence is warranted.  Mr. Calloway did not just cooperate with the Department of Justice.  He also rendered

substantial assistance to the FDIC.  Following the bank's closure, Mr. Calloway was selected by the FDIC to work for the agency on a contract basis, and he did so for about seven months.  In that capacity he used his tax credit expertise to develop and market liquidation plans for FNBC's tax credit assets.

Mr. Calloway then did much, much more for the agency.  He found bidders for those assets, handheld those bidders through the sales process, and ultimately assisted the FDIC in recovering over $65 million; not a *de minimis* or nominal amount, not a million dollars, over $65 million, Your Honor.  That recovery, which limited the FDIC's losses following FNBC's collapse, was a direct result of Mr. Calloway's actions.

Third, Your Honor, Mr. Calloway has lived and continues to live a meaningful, service-oriented life outside the offense.  Before the criminal activity, Mr. Calloway's life consisted of decades of hard, honest work.  More importantly, Mr. Calloway was and is a dedicated son, husband, father, grandfather, and community servant.

The letters that we submitted uniformly describe Mr. Calloway as a consummate family man; a person who goes out of his way for others; a person who, without seeking any recognition, mowed the grass at a local park for ten years so that Cabrini students could use it for athletic activities.

Mr. Calloway was and remains the rock of his nuclear family, and his service to others extends beyond his own home. Among other examples, he cares for his 85-year-old mother, who suffers from advanced kidney disease. He takes his mother to medical appointments, performs maintenance around her home, and he helps her address other issues that arise in her daily life. Mr. Calloway's sister, Kay, spoke to Mr. Calloway's care for their mother in her letter to the Court.

Suffice it to say, Your Honor, Mr. Calloway's offense conduct does not define who he is, a good man who cares deeply for his family, friends, and community.

Fourth, Your Honor, Mr. Calloway, has unreservedly accepted responsibility. He did so by timely pleading guilty. He did so in open court when he testified on the government's behalf. He did so in a written statement to probation that was submitted last year. His family, friends, and other letter writers confirm that Mr. Calloway is remorseful and ready to bear the consequences of his actions.

Finally, Your Honor, probation will avoid unwarranted sentencing disparities in this case. So far only three defendants have been sentenced in connection with FNBC's collapse: Mr. Ryan, Mr. Burnell, and Mr. Dunlap. Though Mr. Dunlap is more culpable than Mr. Calloway, he is the most similarly situated defendant and a helpful guidepost for

sentencing purposes.  Last month, a different court in this district sentenced Mr. Dunlap to five years probation.

In contrast to Mr. Dunlap, Mr. Calloway did not engage in the conspiracy to unjustly enrich himself.  In contrast to Mr. Dunlap, Mr. Calloway did not profit from fraudulent bank loans in any way.  He certainly, in contrast to Mr. Dunlap, did not spend fraudulent bank loans on luxury items and vacations.

In contrast to Mr. Dunlap, who was charged with 18 U.S.C. § 1349, which allows for a 30-year sentence, Mr. Calloway pleaded guilty to 18 U.S.C. § 371, which allows for only a five-year sentence.  In contrast to Mr. Dunlap's recommended range of 63 to 78 months, Mr. Calloway's recommended range acknowledges explicitly probation and runs only from zero to 36 months.  In further contrast to Mr. Dunlap, Mr. Calloway's cooperation directly led to Mr. Burnell's plea and cooperation, and it was critical in securing Mr. Ryan's conviction.

Given that, Your Honor, Mr. Calloway is less culpable but rendered more substantial assistance than Mr. Dunlap, imprisonment for Mr. Calloway would, therefore, constitute an unwarranted disparity as compared to Mr. Dunlap's term of probation.

In conclusion, Your Honor, Mr. Calloway has been under indictment for over three years and he is ready to close

this regrettable chapter of his life.  When it began, he was laboring under a four-year conflicted legal representation. After counsel was disqualified, he immediately and timely pleaded guilty.  Upon pleading guilty, he promptly cooperated. His cooperation directly led to Mr. Burnell's plea and cooperation.  Mr. Calloway's cooperation and trial testimony was also critical in assisting the government obtain Mr. Ryan's conviction.

His crime was not a violent offense.  He has unreservedly accepted responsibility for his actions.  He has, outside the offense, lived a meaningful life focused on service to his family and others, and he has learned from and grown from this experience.  He will not be a repeat offender.

Your Honor, probation is within the recommended range.  It is a punishment that the government has deemed acceptable and reasonable.  For these reasons and because Mr. Calloway did not personally profit from any fraudulent loans and because he was critical in the FDIC recovering $65 million, we respectfully ask the Court to impose a within recommended range sentence of probation.

THE COURT:  Thank you.

Anything from the government?

MR. PAYNE:  Briefly, Your Honor.  Mr. Calloway is a unique case.  We have addressed that as far as the recommended range, how we determined that considering the prior

representation, which I won't go into any further.

As far his cooperation, Mr. Calloway was fully cooperative. He is a gentleman. I met with him on multiple times, including weekends, evenings. He was always very helpful, and his assistance during this trial was very important. I know that Your Honor saw his testimony.

There are other witnesses who may not have been as clear and forthright on what they did wrong. Mr. Calloway accepted his responsibility and explained it in clear terms and never wavered on that throughout his testimony. He was a witness we did not have to worry about, if you will. He was clear and firm in his acceptance of his responsibility. I think his humility shows through here. Your Honor, we would ask that you grant our motion. Thank you very much, Your Honor.

**THE COURT:** Mr. Calloway, I recognize that you were a vice president of the First NBC and you rose to a position of executive vice president. You started as senior vice president and you rose to executive vice president. You served as a commercial relationship manager with tax credit specialization.

As I mentioned to your colleague a moment ago, unlike many people that I sentence unfortunately on Thursdays, you come from a loving family. They gave you the best that they could, the best that you needed. You are very fortunate to have a lot of friends, a lot of supporters. People think

well of you, as rightly they should.  You have done a good job in the community.

I can't overlook the fact that you served as commercial relationship manager with a tax credit specialization and you committed these acts for a long period of time.  We are not talking about once, twice, three times. It's over a 10-year period that people are accepting the documents that you and others are signing.  Based on those documents and based on your comments at board meetings, they approved loans that they shouldn't have approved knowing that they were not going to be able to pay them back easily.

It's as I said before.  You are digging a hole, and it just keeps getting bigger and bigger and bigger.  I don't know why you did that for that long period of time other than Mr. Ryan was a strong person, but that goes just so far, particularly when you are a senior vice president.  You get to the point where, if you can't say what you need to be saying, you need to walk, get away from the place.  I'm just disappointed in a person with the natural talent that you have and the respect that you command in the community, to just throw that away.  That's just disappointing to me.

As I mentioned, the government has filed a motion for §~5K1.1 of the Sentencing Guidelines.  Under that section the Court may sentence a defendant below the applicable guideline range upon a motion by the government stating that

the defendant has provided substantial assistance in the investigation and prosecution of another person who has committed an offense.

The Court considers a number of factors in weighing a § 5K, which I have done in this case:

Significance and usefulness of the defendant's assistance. I heard your testimony. Very impressive. I think it was very helpful to the government's case.

Truthfulness and completeness of the information. I had no question about that. You owned up to everything that you did, indicating that you did it and that you knew it was wrong at the time you did it, but that notwithstanding you did it.

The nature and extent of the defendant's assistance, which was significant in this case.

In light of all of those facts, the government has offered a § 5K, and I agree with them. I think the § 5K is appropriate in this case. It's appropriate to deviate downward in this particular case. I grant the § 5K motion.

I've considered the guidelines applicable to the case as well as the relevant facts and circumstances involved, including the nature and circumstances of the offense, history and characteristics of the defendant, and fashioned what I believe is a reasonable sentence. It reflects the seriousness of the offense, promotes respect for the law, provides just

punishment, affords adequate deterrence, protects the public, and provides the defendant with appropriate care.

Accordingly, pursuant to the Sentencing Reform Act of 1984 and considering the provisions found in 18 U.S.C. § 3553, it is the judgment of the Court the defendant Robert Calloway is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 30 months.

The sentence is imposed pursuant to 18 U.S.C. § 3553 and § 5K.  It's a downward departure because it reflects the seriousness of the offense but also protects the public, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct.  It considers both the government's motion for § 5K as well as the defendant's motion for a downward variance.

It is the finding of the Court the defendant is not able to pay a fine.  However, in accordance with United States Sentencing Guideline § 3663(a), restitution is mandatory.  Restitution is owed to the victim, the FDIC.  The amount of restitution will be determined by a hearing to be held shortly, and it will take into consideration the net amounts that are due and owing and the portion of the amounts each defendant is responsible to.  It's payable in the amount of $1,000 per month, to be increased or decreased depending upon the ability of the defendant to pay.

Payments shall be made to the clerk of court and forwarded to: United States Clerk's Office, Financial Section, 500 Poydras Street, Room C-151, New Orleans.  It's jointly and severally liable with the co-defendants Ryan, Burnell, Gibbs, and the other defendants in this case.  The United States Bureau of Prisons, the probation office, and the U.S. Attorney's Office are responsible for enforcement.

Upon release from imprisonment, the defendant shall be placed on supervised release for a period of two years.  Within 72 hours of release from prison, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit any federal, state, or local crime, shall be prohibited from possessing a firearm, ammunition, destructive device, or any other dangerous weapon.  The defendant shall not possess a controlled substance, shall cooperate in the collection of a DNA sample, and shall comply with all other standard conditions of supervised release, including the following special conditions: the financial disclosure condition; the financial restriction condition; the defendant shall pay any restitution imposed by the judgment; to impart the seriousness of the defense, the defendant shall perform 50 hours of unpaid community service.

At this time I wish to advise you you have a

right to appeal the sentence to the extent you have not waived that right.  If you are unable to afford the service of an attorney, I will appoint one to represent you.  If you can't afford a copy of this transcript, I will make it available without charge.

It is ordered that the defendant shall pay the United States a special assessment of $100 per count, totaling $100, which shall be due immediately.

It is further ordered defendant Robert Calloway surrender to the institution designated by the United States Bureau of Prisons.

**MR. HOUGHTON:**  Your Honor, may we ask the Court to make a recommendation on that note --

**THE COURT:**  Yes.

**MR. HOUGHTON:**  -- to FPC Pensacola?  We are happy to submit a letter or motion to that regard if we need to.

**THE COURT:**  There's no question I think that it should be in Pensacola or as close to the defendant's family as possible.  I think they would profit.  I also think society would profit from it.  Pensacola seems to be the closest one, at least that I know of.

**MR. HOUGHTON:**  Thank you, Your Honor.

**THE COURT:**  I would recommend that strongly.

**MR. HOUGHTON:**  Thank you.

**THE COURT:**  Dean, do you want to get something

signed?

THE DEPUTY CLERK: The same thing, Judge, Monday, December 11.

THE COURT: Good luck to you, Mr. Calloway.

MR. PAYNE: Your Honor, we will move to dismiss all other pending counts and underlying indictments against Mr. Calloway.

THE COURT: Let that be done.

MR. PAYNE: Thank you.

MR. HOUGHTON: Thank you, Your Honor.

THE COURT: Thank you.

* * *

**CERTIFICATE**

I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of proceedings in the above-entitled matter.

*/s/ Toni Doyle Tusa*
Toni Doyle Tusa, CCR, FCRR
Official Court Reporter